UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jack Eskenazi d/b/a
American HealthCare Capital

    v.                              Case No. 17-cv-610-AJ
                                      Opinion No. 2018 DNH 245

Christopher Slover, et al.

**MEMORANDUM ORDER**

This case involves several players. Plaintiff Jack Eskenazi is a California resident who, through his company American HealthCare Capital, facilitates mergers and acquisitions in the healthcare industry.[1] Defendant Christopher Slover is Texas resident who owns and operates defendants Lakeview Systems and SREHC-New Hampshire ("Slover defendants").[2] Defendant Eric Spofford is a New Hampshire resident who owns and operates defendants New Freedom Academy, LLC, Green Mountain Treatment Center, LLC, and 244 High Watch Road, LLC ("Spofford defendants").

Eskenazi alleges that in 2015, he entered into separate written contracts with Lakeview and New Freedom intended to

---

[1] The court refers to Jack Eskenazi and American HealthCare Capital together as "Eskenazi."

[2] Though Eskenazi's original complaint also named Lakeview Management, Inc. and 50 "Does" as defendants, see doc. no. 1-1 at 3, he omits those defendants from his amended complaint, see doc. no. 43.

facilitate the sale of healthcare facilities in Effingham, New Hampshire.  Eskenazi contends that those contracts entitled him to a finder's fee if Lakeview agreed to sell the healthcare facilities to New Freedom in whole or in part.  But according to Eskenazi, Slover and Spofford went behind his back and entered into a separate agreement under which SREHC leased the healthcare facilities to Green Mountain.  Eskenazi contends that Green Mountain later triggered an option under that agreement and purchased the healthcare facilities outright.  Eskenazi brings this lawsuit seeking to recover his finder's fee.

The parties consented to the jurisdiction of the undersigned magistrate judge.  See doc. no. 37.  The Spofford defendants now move to dismiss (doc. no. 50), arguing, among other things, that the New Hampshire Real Estate Practice Act, N.H. Rev. Stat. Ann. § 331-A:1 *et seq*. ("NHREPA"), bars Eskenazi's claim against them because Eskenazi was not licensed to broker real estate in New Hampshire.  Eskenazi objects, arguing in relevant part that California law governs his agreement with New Freedom and that California courts have long recognized a "finder's" exception to that state's broker regulations.[3]

---

[3] The Slover defendants filed a memorandum in support of the Spofford defendants' motion but have not themselves moved to dismiss.

The court grants the Spofford defendants' motion. While California choice-of-law rules apply to this case, under those rules New Hampshire substantive law governs Eskenazi's contract with New Freedom. And under the NHREPA, that contract is unenforceable because Eskenazi was not a licensed real-estate broker. The court therefore dismisses Eskenazi's claim against the Spofford defendants.

## I. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations in the complaint as true, draw reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations . . . set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

## II. Background

**A. Factual background**

The court culls the following facts from Eskenazi's amended complaint and the three contracts attached to that complaint.[4] Eskenazi owns American HealthCare Capital, a mergers and acquisitions firm that provides financial planning and strategic consultation primarily to entities in the healthcare industry. Doc. no. 43 ¶¶ 2, 3. Slover resides in Austin, Texas, and conducts business as Lakeview Systems. Id. ¶ 4. Slover also owns and controls SREHC-New Hampshire, a Delaware limited liability company. Id. ¶ 5. Spofford resides in Derry, New Hampshire, and is the manager and member of New Freedom Academy, LLC. Id. ¶ 9. Spofford also owns and controls Green Mountain Treatment Center, LLC, and 244 High Watch Road, LLC. Id. ¶¶ 10, 11.

On or about June 1, 2015, Eskenazi and Lakeview entered into a finder's fee agreement for the sale of "medical business

---

[4] Though a court typically may not consider facts or documents outside of the complaint when ruling on a Rule 12(b)(6) motion, the First Circuit recognizes a limited exception to this rule for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009). As Eskenazi refers to the attached contracts several times in his complaint, and as the contracts are central to his claims, the court may properly consider them.

4

opportunity." Id. ¶ 17; see also doc. no. 43-1. Eskenazi agreed to help Lakeview sell traumatic brain injury facilities in Effingham, New Hampshire, by introducing Lakeview to potential buyers. Doc. no. 43 ¶¶ 19-22. In return, Lakeview agreed to pay Eskenazi a finder's fee if one or more of the buyers Eskenazi introduced offered to purchase the facilities in whole or in part. Id. ¶ 23. Slover signed the agreement on Lakeview's behalf. Id. ¶ 18.

On October 26, 2015, Eskenazi entered into a confidentiality agreement with New Freedom. Id. ¶ 24; see also doc. no. 43-2. Eskenazi agreed to share confidential information with New Freedom so that New Freedom could evaluate purchasing the Effingham facilities. Doc. no. 43-2 at 1. Written on Eskenazi's letterhead, the confidentiality agreement was addressed to Spofford at New Freedom's New Hampshire location. Id. The agreement stated that if New Freedom circumvented Eskenazi in purchasing the facilities, New Freedom would owe Eskenazi the finder's fee owed under his contract with Lakeview. Id.; doc. no. 43 ¶ 25. The confidentiality agreement did not contain a place-of-performance clause. See doc. no. 43-2.

Just over a month later, SREHC agreed to lease the Effingham facilities to Green Mountain. Doc. no. 43 ¶ 31; see also doc. no. 43-3. The lease agreement covered all equipment,

machinery, and personal property at the Effingham facilities. Doc. no. 43 ¶ 32. The lease also granted Green Mountain an option to purchase the Effingham facilities. Id. ¶ 33. Green Mountain exercised that option in April 2017. Id. ¶ 36.

**B. Procedural history**

Eskenazi initially filed this action in Los Angeles County Superior Court, alleging counts of fraud and breach of contract. See doc. no. 1-1 at 3-8. Invoking federal diversity jurisdiction, SREHC removed the case to the United States District Court for the Central District of California. See doc. no. 1. The defendants collectively asked that court to dismiss the case for want of personal jurisdiction or improper venue or, alternatively, to transfer the case to the District of New Hampshire. See doc. no. 17. The court granted the defendants' alternative request and transferred the case to this district under 28 U.S.C. § 1404(a). See doc. no. 26.

After some procedural machinations not presently relevant, Eskenazi filed an amended complaint, alleging one count of breach of contract against the Slover defendants and one count of breach of contract against the Spofford defendants. See doc. no. 43. The Spofford defendants moved to dismiss, arguing (among other things) that the NHREPA bars the claim against them because Eskenazi was not licensed to broker real estate in New Hampshire. See doc. no. 50-1 at 4-6. Eskenazi initially

6

responded that he was not a "broker" as defined by that statute. See doc. no. 54 at 2-4. The Spofford defendants filed a reply, see doc. no. 55, and, in response, Eskenazi argued for the first time that he was not subject to the NHREPA because California law governed his agreement with New Freedom, see doc. no. 56.

After hearing oral argument on July 31, 2018, the court ordered the parties to submit additional briefing. The court specifically directed the parties to brief three issues: (1) whether California choice-of-law rules apply; (2) assuming so, whether California or New Hampshire substantive law governs the confidentiality agreement; and (3) if California substantive law applies, whether Eskenazi's claim against the Spofford defendants is barred by that state's broker-licensing regulations. Eskenazi and the Spofford defendants each filed initial briefs on August 22 and response briefs on August 29. See doc. nos. 59, 60, 61, 62. Two days later, the Slover defendants filed a memorandum in support of the Spofford defendants' motion to dismiss. Doc. no. 63. Eskenazi filed a response to that memorandum. Doc. no. 66.

### III. Discussion

**A. Choice of law**

At the outset, the court must determine whether California or New Hampshire choice-of-law rules apply. "A federal court

sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 65 (2013). But when a case is transferred under 28 U.S.C. § 1404(a), the "state law applicable in the original court also [applies] in the transferee court." Id. (citations omitted). As this case was transferred here under § 1404(a) from the Central District of California, the court concludes (and the parties do not meaningfully dispute) that California choice of law applies.

This determination only gets the court so far, however, as California courts apply two different choice-of-law tests to contracts: California Civil Code § 1646 and the common-law governmental-interest test. The parties dispute which test applies here. Eskenazi contends that § 1646 governs contract interpretation and that this case requires the interpretation of the confidentiality agreement. The Spofford defendants counter that the governmental-interest test applies because the court must determine whether the confidentiality agreement is valid and enforceable, not interpret its terms.

California caselaw generally supports the parties' implicit assumption that § 1646 only applies to contract interpretation. See, e.g., Castaldi v. Signature Retail Servs., Inc., No. 15-cv-737-JSC, 2016 WL 74640, at *5 (N.D. Cal. 2016); Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1460 (2007). But

this position is by no means universal, as courts have also applied § 1646 to enforceability proceedings. See, e.g., Pizza v. Fin. Indus. Regulatory Auth., Inc., No. 13-cv-0688 MMC (NC), 2015 WL 1383142, at *1 (N.D. Cal. Mar. 19, 2015); Henderson v. Superior Court, 77 Cal. App. 3d 583, 592, 142 (1978). Without any clear guidance from the California Supreme Court, the court is left with conflicting authority on the scope of § 1646's reach. The court ultimately need not pick a side, however, because the outcome is the same under both tests. As discussed below, New Hampshire substantive law applies under § 1646 and the governmental-interest test.

1.  California Civil Code § 1646

The court turns first to § 1646. Under that provision a court must interpret a contract "according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. In so doing, a court must "determine the choice of law with respect to the interpretation of a contract in accordance with the parties' presumed intention at the time they entered into the contract." Frontier, 153 Cal. App. 4th at 1450. If a contract fails to indicate a place of performance, "[t]he parties' intention as to the place of performance can be gleaned from the nature of the contract and the surrounding circumstances." Id. A contract is

"'made' in the place of acceptance." Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007) (citing ABF Capital Corp. v. Grove Properties Co., 126 Cal. App. 4th 204, 222 (2005)).

The confidentiality agreement does not contain choice-of-law or place-of-performance provisions. See doc. no. 43-2. Nor is a place of performance readily discernable from the agreement itself or the surrounding circumstances. While the confidentiality agreement is written on Eskenazi's letterhead, and therefore includes a California address, it is addressed to Spofford at New Freedom's New Hampshire location. The agreement contemplates communications between California and New Hampshire, while referring explicitly to property in New Hampshire. It is unclear where the contract was made, as Eskenazi and Spofford signed the agreement on the same day and neither the agreement itself nor Eskenazi's amended complaint clearly indicates which party accepted the agreement.[5] The place of performance and place of acceptance are therefore unclear.

---

[5] As the agreement is on Eskenazi's letterhead and is addressed to Spofford in New Hampshire, one might reasonably infer that Spofford was the accepting party. But at this juncture, the court must draw all reasonable inferences in Eskenazi's favor. When so drawn, the court concludes that there is no clear indication where the confidentiality agreement was accepted.

When confronted with such circumstances, California courts apply the factors set forth in Section 188 of the Restatement (Second) of Conflict of Law. See, e.g., Royal Hawaiian Orchards, L.P. v. Olson, No. CV 14-8984-RSWL, 2015 WL 6039202, at *3 (C.D. Cal. 2015); Henderson, 77 Cal. App. 3d at 592-93. That section provides that a contract "will be determined by the law of the state, which with respect to that issue, has the most significant relationship to that transaction." Royal Hawaiian Orchards, L.P., 2015 WL 6039202, at *3 (internal quotation marks omitted) (quoting Restatement (Second) Conflict of Laws § 188(1)). Section 188(2) sets forth a series of factors courts must consider when determining which state has the most significant relationship to a transaction: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." Id. (quoting Restatement (Second) of Conflict of Laws § 188(2)(a)-(e)). These factors "are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 188(2).

Applying the § 188 factors, the court concludes that New Hampshire has the most significant relationship to the transaction contemplated by the confidentiality agreement. The

first, third, and fifth factors cut both ways for reasons already stated. So, too, does the second factor, as it appears the confidentiality agreement was negotiated electronically in both California and New Hampshire. But the fourth factor — the location of the subject matter of the contract — weighs heavily in favor of New Hampshire. The confidentiality agreement primarily concerns communications from California to New Hampshire designed to facilitate the sale of a New Hampshire property. Based on this fact, the court cannot help but conclude that the subject matter of the confidentiality agreement is at very least predominantly in New Hampshire. New Hampshire is therefore the forum with the most significant relationship to the transaction. As such, New Hampshire substantive law applies.

    2.   <u>Governmental-interest test</u>

The governmental-interest test points in the same direction. Under that test, the party seeking to apply foreign law must first "identify the applicable rule of law in each potentially concerned state and must show that it materially differs from the law of California." [Wash. Mut. Bank, FA v. Superior Court](), 24 Cal. 4th 906, 919 (2001). Where the laws are materially different, the court must then determine "what interest, if any, each state has in having its own law applied to the case." <u>Id.</u> at 920 (citation omitted). If each state has

an interest, the court must ultimately "select the law of the state whose interests would be 'more impaired' if its law were not applied." Id. (citations omitted).

The parties do not meaningfully dispute that, as applied to this case, the laws in California and New Hampshire materially differ. While both states prohibit a person from brokering real estate without a license, see N.H. Rev. Stat. § 331-A:3; Cal. Bus. & Prof. Code § 10130, California recognizes a finder's fee exception to its licensing requirement and New Hampshire does not, compare Tyrone v. Kelley, 9 Cal. 3d 1, 8 (1973) ("[O]ne who simply finds and introduces two parties to a real estate transaction need not be licensed as a real estate broker. Such an intermediary or middleman is protected by the finder's exception to the real estate licensing laws . . . .")[6] with Blackthorne Group, Inc. v. Pines of Newmarket, Inc., 150 N.H. 804, 809-10 (2004) (barring the plaintiff, a broker not licensed in New Hampshire, from recovering a fee even where real estate was incidental to the transaction). Moreover, the court has no trouble concluding that each state has an interest in having its law apply: New Hampshire has an interest in preventing unqualified individuals from brokering real estate within its

---

[6] See also Lindenstadt v. Staff Builders, Inc., 55 Cal. App. 4th 882, 893-94 (1997) (reaffirming the existence and validity of the finder's exception).

borders and California has an interest in protecting entities that structure their business models around its finder's fee exception. The court must therefore determine which state's interest would be more impaired if its laws were not applied to the confidentiality agreement.

For reasons similar to those previously discussed, the court concludes that New Hampshire's interests would be more impaired if its laws were not applied. At its core, the confidentiality agreement was designed to facilitate the sale of New Hampshire real estate. Real-estate sales are the precise sort of transactions the NHREPA was designed to regulate. By comparison, California's interests are far more attenuated, as that state's broker regulations and finder's fee exception plainly apply to real-estate transactions occurring within California. See Cal. Bus. & Prof. Code § 10130 (prohibiting a person from brokering real estate without a license "within this state"). The court therefore concludes that New Hampshire substantive law also applies under the governmental-interest test.

**B. Substantive law**

The Spofford defendants contend that the confidentiality agreement is void under New Hampshire law because Eskenazi was not a licensed real-estate broker as required by the NHREPA. The court agrees.

The New Hampshire Supreme Court interpreted the scope of the NHREPA's licensing requirements in Blackthorne Group, Inc. v. Pines of Newmarket, Inc. In that case, the plaintiff contended that it was not subject to those requirements because "it acted merely as a business broker [that] facilitated the sale of the defendant's business as a going concern." Blackthorne, 150 N.H. at 809. The New Hampshire Supreme Court rejected that argument, noting that the NHREPA broadly defined "real estate" to include "business opportunities which involve any interest in real estate." Id. at 809 (quoting N.H. Rev. Stat. Ann. § 331-A:2, IX) (emphasis in original). The court concluded that this broad definition extended the NHREPA's licensing requirements to any transaction involving real estate "regardless of whether real estate is 'incidental' to the transaction" and "no matter how *de minimis* the real estate interest." Id. at 809-10. The court noted that the statute's only exemption — for "those who receive a fee from a client based on site searching services rendered in accordance with a written contract, rather than on completion of any particular transaction, and who do not hold themselves out as real estate brokers" — did not apply, in part because the fee in question was dependent upon completion of a particular transaction. Id. at 809 (brackets, ellipsis, and internal quotation marks omitted) (quoting N.H. Rev. Stat. Ann. § 331-A:4, VIII). The

court thus concluded that "because the plaintiff lack[ed] a New Hampshire license, its agreement with the defendant . . . [was] invalid and unenforceable." Id. at 808 (citing N.H. Rev. Stat. Ann. § 331-A:32 (prohibiting any person without a New Hampshire real-estate license from enforcing a brokerage agreement)).

The same is true in this case. Even were the court to accept Eskenazi's argument that the confidentiality agreement only tangentially relates to New Hampshire real estate, Blackthorne makes clear that this is enough to be subject to of the NHREPA's licensing requirements. And as was the case in Blackthorne, the NHREPA's narrow exemption to those requirements does not apply here because Eskenazi's finder's fee became due on "completion of a particular transaction." Eskenazi was therefore required under the NHREPA to secure a New Hampshire real-estate broker's license. As there is no dispute that Eskenazi did not hold such a license when he entered into the confidentiality agreement, that agreement is unenforceable. See N.H. Rev. Stat. Ann. § 331-A:32.

### IV. Conclusion

For the reasons set forth above, the court **grants** the Spofford defendants' motion to dismiss (doc. no. 50). In light of this determination, the court **denies as moot** the Spofford defendants' motion to strike (doc. no. 57). Because the Slover

defendants have not moved to dismiss, the court takes no action with respect to Eskenazi's claim against them.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

December 12, 2018

cc: Jonathan Mark Levitan, Esq.
James F. Laboe, Esq.
Jeffrey C. Spear, Esq.
Peter N. Tamposi, Esq.
David Edward LeFevre, Esq.